```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ILLINOIS
                   EASTERN DIVISION

MEYER INTELLECTUAL PROPERTIES    )
LIMITED, et al.,                 )
                                 )
              Plaintiffs,        )
                                 )
     v.                          )    No.  06 C 6329
                                 )
BODUM, INC.,                     )
                                 )
              Defendant.         )
```

## MEMORANDUM OPINION AND ORDER

Meyer Intellectual Properties Limited and Meyer Corporation, U.S. (collectively "Meyer," treated after this sentence as a singular noun to avoid awkward verb usage) claim that Bodum, Inc. ("Bodum") infringed two of its United States patents:  Numbers 5,780,087 ("Patent '087," entitled Apparatus and Method for Frothing Liquids) and 5,939,122 ("Patent '122," entitled Method for Frothing Liquids).[1]  Although the parties cannot agree on the proper construction of some of the patent claims, they do agree on which claims are in dispute and have submitted a joint letter identifying the disputed language.[2]  This opinion conducts a <u>Markman</u> analysis to construe language contained in Claim 1 of Patent '087 and in Claims 1 and 10 of Patent '122.

---

[1] Citations to the patents will utilize a colon, with the number preceding the colon denoting the column and the number after the colon denoting the line.

[2] Each party has filed an initial and a responsive memorandum, respectively cited "Mem." and "R. Mem." (naturally preceded by "M." or "B.").

## Tenets of Claim Construction

Claim construction, which is a question of law exclusively for court determination, is conducted in patent cases before trial to determine the scope and meaning of patent claims (Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996)). Courts are called upon to construe only claim language that is in dispute, not to inform parties whether any agreed-upon construction is right or wrong (U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1568 (Fed. Cir. 1997)).

In any infringement action the court must resolve issues of claim construction before moving to the infringement claim (Apex Inc. v. Raritan Computer, Inc., 325 F.3d 1364, 1370 (Fed. Cir. 2003)). For that purpose claim terms should be given their ordinary and customary meaning as understood by a person of ordinary skill in the art (Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005)(en banc)). To safeguard against any distortion of meaning based on hindsight, courts must reverse the sand through the hourglass and ascribe to claim language its meaning when the patent application was filed (id.).

By definition the most important indicator of a claim's meaning is the claim language itself (Middleton, Inc. v. Minn. Mining & Mfg. Co., 311 F.3d 1384, 1387 (Fed. Cir. 2002); Phillips, 415 F.3d at 1312). Beyond that, a construing court's primary focus should be on other intrinsic evidence: other

2

claims within the same patent, the patent's specification and the prosecution history (Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc., 222 F.3d 951, 955 (Fed. Cir. 2000)).³ But as important as the specifications are in claim construction (Phillips, 415 F.3d at 1315), a court must be mindful to avoid importing limitations from the specifications into the claims (id. at 1323).

Extrinsic evidence may be used to supplement interpretation when needed to resolve lingering ambiguity (Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1583-84 (Fed. Cir. 1996)). Judges are free to consult and rely on dictionary definitions, although extrinsic in nature, so long as the definitions do not contradict claim terms (id. at 1584 n.6). Dictionary definitions are off limits, however, when the patentee has written with a lexicographer's quill and crafted special definitions (id. at 1582; Phillips, 415 F.3d at 1316). Such specially defined meanings trump ordinary usage.

---

³ As for prosecution history, Bodum's opening Mem. 2-6 proffers an extensive account of the patents' asserted antecedents as well as the journey of the patents in suit through the Patent and Trademark Office. That excursion struck this Court as little (if anything) more than a preview of coming attractions, signaling Bodum's future challenge to the patents' validity--it certainly did nothing to advance the present inquiry as to the meaning of the contested claims, which will hereafter serve as the framework for the litigants' later battle as to validity and infringement.

## Patents' Subject Matter

Both patents claim inventions for frothing liquid (think milk) without using steam or electricity (Patent '087 and Patent '122 abstracts). Users of the apparatus and method can manually pump a screened plunger into a container of milk to create froth in the confines of home[4] without the need for the conventional (and cumbersome) steamer. In the preferred embodiment, as the user pumps the plunger vertically inside the cylindrical container, the liquid is aerated by the agitation caused by forcing it through the screened portion of the plunger and is thus frothed.

## Claim 1 of Patent '087

In Claim 1 of Patent '087 the parties seek construction of this language:

> the plunger comprising;
> a plunger body having a circumference;
> a screen; and
> a spring positioned about the circumference of the plunger body such that the spring is biased to hold the screen in place in contact with, though not sealably connected to, the container;

Some of that language has been agreed upon:

1. "Spring" means "an elastic body or device that recovers its original shape when released after being distorted" (M. Mem. 7; B. Mem. 11).

---

[4] Or, for those who prefer, at a remote campsite far removed from the trappings (and electrical outlets) of our modern world.

2. "A plunger body having a circumference" means "a component (of the plunger) having an outer circular periphery" (M. R. Mem. 5; B. Mem. 11).

Bodum also proposes that "screen" be defined as "a perforated plate or meshed wire or cloth of no particular shape or size" (B. Mem. 12), and Meyer has agreed to accept the bulk of that definition, requesting only that "of no particular shape or size" be left off as surplusage (M. R. Mem. 2). As is so often the case, the shorter version is superior. Adding "of no particular shape or size" contributes nothing to the definition. Hence Meyer's version of the definition is adopted.

At the core of the parties' dispute is the phrase "the spring is biased to hold the screen in place in contact with, though not sealably connected to, the container." Meyer proposes that "not sealably connected to" means that "no connection or seal is made which prevents sliding of the screen and spring" (M. R. Mem. 5),[5] while Bodum proposes that the entire phrase means that the "spring is distorted to hold the screen in contact with the container but the screen does not prevent passage of liquid in the region of contact" (B. R. Mem. 3). Each party points to this language in the specification as relating to the claim

---

[5] Meyer urges elsewhere (M. Mem. 11) that no definition is required because Claim 1 simply and clearly means what it says.

5

language (Patent '087 4:3-11) (M. Mem. 8; B. Mem. 12):[6]

> Spring 49 (FIGS. 7 and 8) is further placed within the annular groove 48 of plate 41 and about screen 42 so as to bias screen 42 such that it will be proximate to, though not in sealable contact with the inner wall of container 10 and plunger 40 with plates 41 and 43, together with screen 42 and spring 49, will be permitted to slidably move vertically along the inner wall of container 10 when plunger 40 is in the pumping mode to agitate the liquid in container 10.

As used in Claim 1, "sealably" is an adverb modifying "connected"--but negatively ("not sealably connected to"). What is plainly meant is that although the screen contacts the container, no seal is created between the screen and the container. If a seal were to be created, after all, the plunger could not be pumped by "moving the rod in a vertical motion" as is contemplated later in Claim 1 of Patent '087. Hence the just-stated construction is supported by the ordinary meaning of the claim language and the earlier-quoted specification language, and it is certainly consistent with Figure 2.[7]

Bodum attempts to add a new concept that is not addressed by the claim language: the passage of liquid at the region of contact between the screen and the container. Neither the

---

[6] But having done so, Bodum ultimately posits that the specification adds nothing to the meaning of the claim (so that it says its proposed construction is simply "its best guess")(B. Mem. 12).

[7] Figure 2 depicts the screen touching the container. It is not possible to discern from the drawing alone whether a seal is formed by the contact.

6

Claim 1 language nor the cited portion of the specification frames the claim in terms of whether liquid can pass through the contact region. Instead the focus is placed solely on whether a seal is created between the screen and the container. Adopting Bodum's language would impermissibly recast the claim itself.

Meyer's proposed definition of the phrase "not sealably connected to" as "no connection or seal is made, which prevents sliding of the screen and spring" is not quite right either. "Not sealably connected to" does not mean that no connection is made--only that no <u>sealed</u> connection is made. And it means that no seal is created at all--it does not just negate seals that prevent sliding of the screen and spring. Confining the definition to read "no sealed connection is made" is more accurate, and it is the construction that this Court adopts.

### Claims 1 and 10 of Patent '122

In Claims 1 and 10 of Patent '122 the parties dispute the meaning of this language:

> the plunger body further including means for holding the screen such that, as the plunger passes through the liquid, substantially no liquid passes between the circumference of the plunger body and the inside wall of the [container/housing][8]

As in Claim 1 of Patent '087, "screen" will be given the meaning of "a perforated plate or meshed wire or cloth."

---

[8] [Footnote by this Court] Claim 1 employs the word "container," while Claim 10 substitutes "housing."

Both parties agree, and this Court concurs, that the "means for holding" provision is a means-plus-function clause governed by 35 U.S.C. §112 ¶6:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

Construction of a means-plus-function limitation is a two-step process, involving (1) determination of the claimed function and then (2) identification of the corresponding structure in the written description of the patent that performs that function (Applied Med. Res. Corp. v. U.S. Surgical Corp., 448 F.3d 1324, 1332 (Fed. Cir. 2006)). As to the first step, both parties agree that the claimed function is to "hold[ ] the screen such that, as the plunger passes through the liquid, substantially no liquid passes between the circumference of the plunger body and the inside wall of the [container/housing]" (M. Mem. 9-10; B. Mem. 14).

That said, however, Bodum first takes issue with the functional language by claiming indefiniteness, pointing to the phrase "substantially no liquid" (although without further specifying any flaw created by such purported indefiniteness)(B. Mem. 15). But that type of asserted imprecision does not of itself render a claim indefinite (see, e.g., Aero Prods. Int'l,

8

Inc. v. Intex Recreation Corp., 466 F.3d 1000, 1015-16 (Fed. Cir. 2006), finding that a claim containing the qualifier "substantially" was invulnerable to a charge of indefiniteness). Although definiteness analysis must be viewed from "[t]he perspective of a person of ordinary skill in the art at the time of the patent application" (Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd., 401 F.3d 1367, 1371 (Fed. Cir. 2005)), no arcane meaning attaches to the word "substantially" here--it rather takes on its role as the adverbial form of the familiar meaning of "substantial": "being that specified to a large degree or in the main" (Webster's Third New Int'l Dictionary 2280 (1993)).

More significantly, the concept of "substantially no liquid" clearly conveys the information that no appreciable amount of liquid passes between the circumference of the plunger body and the inside wall, though some does (and defining the exact amount is scarcely necessary).[9] That reading is wholly consistent with the patent's purpose, for the quality and success of the frothing depends on the milk that passes through the screened component of the plunger, not around it. There is no impermissible indefiniteness present here.[10]

---

[9] Note how that reading jibes with the already-discussed claim in the other patent in suit. Absent an actual seal, the passage of some liquid between the plunger body and the inside wall is exactly what might be expected.

[10] B. Mem. 16-17 also disputes language in Claims 19 and 23 of Patent '122, even though that language was not mentioned in

9

This rejection of Bodum's contention of indefiniteness carries with it an easier resolution of the parties' dispute over what structure performs the claimed function. Meyer identifies the spring as the structure, while Bodum proposes that the structure comprises the spring disposed about the top plate, the bottom plate and the associated mechanism for sandwiching the screen between the plates (M. Mem. 10; B. Mem. 15).

Once it is recognized that the structure sought is the means that produces the desired result--the passage of "substantially no liquid" outside of the plunger body (so that most all of the liquid is squeezed through the screen)--it is clear that Meyer has offered the better construction. First, by definition the spring is the means that performs the claimed function. First, the spring is the "means for holding the screen" in contact with the container. As explained in the specification, the spring is placed "so as to bias screen 42 such that it will be proximate to, though not in sealable contact with, the inner wall of container 10" (Patent '122 4:9-11). Relatedly, Patent '122 5:5-7 specifies that the plunger has "a spring 49 for biasing the

---

the parties' joint letter to this Court identifying the disputed language (M. Mem. Ex. D). M. R. Mem. 4 responds that to the extent the language was identical to other language in Patent '122, the same construction should be adopted. Accordingly the word "screen" in Claims 19 and 23 will be given the same construction as in Claims 1 and 10 of Patent '122, and the phrase "substantially no liquid passes between the circumference of the plunger body and the inside wall of the housing during the pumping step" is again found to be sufficiently definite.

screen to be in close contact with the inner wall of container 10." Second, the drawings show the spring as the outermost part of the plunger body that, by pushing outward, ensures that substantially no liquid passes between the plunger body and the container. As shown in Figure 2, the spring itself presses the screen into contact with the container wall.

To be sure, the spring does not exist in a vacuum--it performs its function in the environment of the plunger and its housing. But that is always true of the means in any means-plus-function claim. And that does not make the environment itself part of the means where, as here, the claim language unmistakably ascribes that role to the spring. This Court adopts Meyer's proposed construction that the structure in this means-plus-function provision is the "spring."

## Conclusion

This opinion has construed the disputed terms in Claim 1 of Patent '087 and Claims 1 and 10 of Patent '122--all in favor of the more persuasive arguments advanced by Meyer. It is now possible to move toward disposition of the substance of the case, for which purpose this action is set for a status hearing at 9 a.m. May 22, 2008.

_____
Milton I. Shadur
Senior United States District Judge

Date: May 14, 2008