IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MEYER INTELLECTUAL PROPERTIES       )
LIMITED, et al.,                    )
                                    )
            Plaintiffs,             )
                                    )
     v.                             )   No. 06 C 6329
                                    )
BODUM, INC.,                        )
                                    )
            Defendant.              )

MEMORANDUM OPINION AND ORDER

Meyer Intellectual Properties Limited and Meyer Corporation U.S. (collectively "Meyer," treated after this parenthetical explanation as a singular noun to avoid awkward verb usage) initially brought this action to charge that Bodum, Inc. ("Bodum") had "infringed, induced and/or contributed to the infringement" of two of Meyer's United States patents: Numbers 5,780,087 ("Patent '087," entitled "Apparatus and Method for Frothing Liquids") and 5,939,122 ("Patent '122," entitled "Method for Frothing Liquids"). This Court's February 11, 2009 memorandum opinion and order ("Opinion," 597 F.Supp.2d 790) granted summary judgment in Meyer's favor as to such infringement by Bodum products then on the market.

With Bodum now having redesigned some of its products in an effort to avoid further liability, Meyer has again moved for summary judgment under Fed. R. Civ. P. ("Rule") 56, this time invoking only Patent '122 to target Bodum's new products. For the reasons stated in this memorandum opinion and order, Meyer's

motion is granted in part and denied in part.

## Summary Judgment Standards

Every Rule 56 movant bears the burden of establishing the absence of any genuine material factual dispute (<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider evidentiary records in the light most favorable to the nonmovants and draw all reasonable inferences in their favor (<u>Lesch v. Crown Cork & Seal Co.</u>, 282 F.3d 467, 471 (7th Cir. 2002)). But to avoid summary judgment a nonmovant "must produce more than a scintilla of evidence to support his position" that a genuine issue of disputed fact exists (<u>Pugh v. City of Attica</u>, 259 F.3d 619, 625 (7th Cir. 2001)) and "must set forth specific facts that demonstrate a genuine issue of fact" (<u>id</u>.).

Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). What follows is a summary of the facts, viewed of course in the light most favorable to nonmovant Bodum--but within the limitations created by the extent of its compliance (or noncompliance) with the strictures of LR 56.1.[1]

---

[1] Meyer's LR 56.1 statement of facts will be cited "M. St. ¶--," with Bodum's responsive statement cited "B. St. ¶--." Statements of additional facts will respectively be cited "M. Add. St. ¶--" and "B. Add. St. ¶--."

Factual Background

According to its Abstract, Patent '122 describes a "method which permits the frothing of a liquid, such as milk, without the need for traditional steam and/or electricity." Bodum admits that it obtained notice of Patent '122 through the filing of the Complaint (B. Add. St. ¶22). As stated earlier, the Opinion addressed, and found against Bodum on, its milk frothers that were on the market when Meyer filed the Complaint (the "Version 1 frothers").

About May 2007 Bodum had already begun the process of redesigning the Version 1 frothers (B. Add. St. ¶32). While the Version 1 frothers comprised a container, a lid and a plunger assembly that may be pumped up and down within the container (M. St. ¶1), Bodum initially redesigned the Version 1 frothers by substituting a plunger assembly from an existing Bodum coffee press (B. Add. St. ¶33). That substitute differed from the Version 1 plunger in that it (1) featured a silicone O-ring surrounding the screen and (2) did not feature a spring or "feet-like protrusions" at the base (M. Mem. 1; M. St. ¶¶2, 5, 10).

As for the first of those differences, Bodum maintains that it had intended to remove the O-ring from the substitute plunger before producing the redesigned frothers (B. Add. St. ¶¶33-34).

In that respect Claims 19-21 and 23-25 of Patent '122[2] include a limitation providing that "substantially no liquid passes between the circumference of the plunger body and the inside wall of the container" when the frother is operated (M. St. ¶18; Patent '122 7:17-8:4, 8:7-31). Bodum reasoned that it could circumvent that limitation (and thus avoid infringement) by removing the O-ring, so that a greater amount of liquid could pass between the plunger and the container (B. Add. St. ¶33). But Bodum mistakenly produced and sold frothers with O-rings ("Version 2 frothers") during a period that began about July 2007 and ran through June 2008 (M. St. ¶¶5, 8; B. St. ¶5; B. Add. St. ¶34). Later Bodum removed the O-ring, creating its second redesign ("Version 3 frothers"), which it began selling about July 2008 (M. St. ¶¶9, 10; B. Add. St. ¶34).

## Scope of the Motion

Meyer's motion argues that this Court should grant summary judgment on the issue of Bodum's liability for infringement of Patent '122 by both its Version 2 and its Version 3 milk frothers. Meyer contends that Bodum is liable for both direct infringement under 35 U.S.C. 271(a)[3] and inducement of infringement under Section 271(b), and it asserts that Versions 2

---

[2] This opinion's analysis will focus--as do the parties (see M. St. Ex. H)--on those claims of Patent '122.

[3] All further citations to Title 35's provisions will take the form "Section --," omitting the prefatory "35 U.S.C."

4

and 3, when operated according to Bodum's enclosed instructions, infringe the Patent '122 method both literally and under the doctrine of equivalents.

## Direct Infringement

Under Section 271(a):

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

All of the claims in Patent '122 are method claims (Patent '122 5:25-8:33).[4] Because "a method or process consists of one or more operative steps," infringement of a patented method under Section 271(a) occurs only when "all steps or stages of the claimed process are utilized" (NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1318 (Fed. Cir. 2005)(internal quotation marks and brackets omitted)). In that respect Moba, B.V. v. Diamond Automation, Inc., 325 F.3d 1306, 1313 (Fed. Cir. 2003) instructs:

> The sale or manufacture of equipment to perform a claimed method is not direct infringement within the meaning of 35 U.S.C. §271(a).

Thus Bodum asserts that it cannot be held liable under

---

[4] As Meyer points out, Patent '122 also refers to the invention as "an apparatus," not merely as a method (M. St. ¶17). But Patent '122 is entitled "Method for Frothing Liquids" (not, like Patent '087, "Apparatus and Method"), and it does not include any apparatus claims (Patent '122 5:1, 5:25-8:33).

5

Section 217(a) merely for manufacturing, selling or offering to sell Versions 2 and 3. But that is not enough to take Bodum out of Section 217(a)'s reach--for that purpose Bodum also contends that it cannot be held liable under that section for "use" of the patented method because Meyer has not offered evidence that Bodum itself actually performed each step of the method (B. St. ¶36).

That position, however, does not withstand analysis. It requires this Court (as it would require a factfinder) to believe that an established company such as Bodum would have placed Version 2 and later Version 3 on the market for public sale, and would have kept those products on the market for substantial periods of time, without having first confirmed for itself that each product would perform its allotted task--that it would generate frothed milk through the use of the plunger, first with an O-ring (for an entire year) and then without one (for more than another year). And that confirmation could not reasonably have taken the form of merely putting the designed products down on paper through schematics--Bodum would necessarily have practiced the art through <u>use</u>, bringing its conduct within that scope of infringement under Section 217(a).

It must be remembered that the Rule 56 formulation does not call for drawing every conceivable inference in favor of the nonmovant--instead the caselaw speaks of all <u>reasonable</u> inferences. And that standard does not require the Rule 56 court

6

to believe in the tooth fairy, or in this instance to credit the entirely unrealistic factual conclusion advanced by Bodum. So Bodum's "use" of the Patent '122 method has been established as a matter of law, and this opinion goes on to address the other elements of infringement.[5]

In that respect Meyer argues that Versions 2 and 3 "necessarily infringe" Patent '122 both literally and under the doctrine of equivalents. To prove literal infringement of a patented method such as that taught in Patent '122, the patentee must demonstrate that the accused infringer has practiced all of the steps of the claimed method (NTP, 418 F.3d at 1318). And literal infringement is a question of fact (Cook Biotech Inc. v. Acell, Inc., 460 F.3d 1365, 1373 (Fed. Cir. 2006).

As stated at the outset, the Opinion has earlier held that Bodum's Version 1 directly infringed Patent '122. Bodum then changed only one component of Version 1--the plunger assembly--when it created Versions 2 and 3 (M. St. ¶¶4, 11). Meyer contends that the Version 2 and 3 frothers also literally

---

[5] Bodum also argues that it cannot be held liable under Section 271(a) on a "divided infringement" theory because it "does not control or direct [its customers] to perform the method steps" (B. Mem. 9). But it is unnecessary to assess whether Bodum has the requisite relationship with its customers (see, e.g., Muniauction, Inc. v. Thomson Corp., 522 F.3d 1318, 1329-30 (Fed. Cir. 2008)) because Meyer does not actually argue divided infringement (M. R. Mem. 10). Bodum mistakes Meyer's contentions of inducement liability under Section 271(b)(discussed hereafter) for assertions of divided infringement liability under Section 271(a).

7

infringe Patent '122 when used as directed, and that Bodum's changes to the plunger do not avoid infringement. Indeed, Meyer's opinion witness asserts that he infringed Claims 19-21 and 23-25 by following Bodum's instructions for Versions 2 and 3 (M. St. ¶¶15, 20; B. St. ¶¶15, 20).

Bodum responds that Version 2 does not literally infringe because "[C]laims 19 and 23 of [Patent '122] each require a spring and screen configuration on the plunger body," and the Version 2 plunger assembly does not feature a spring (B. Mem. 11-12). Even though Claims 19 and 23 do not explicitly require a spring, Bodum attempts to invoke Watts v. XL Sys., Inc., 232 F.3d 877, 882-83 (Fed. Cir. 2001) for the proposition that a court may consult the specification for guidance when claim language is ambiguous. Seeking to analogize to Watts--where the court found the phrase "dimensioned such that" ambiguous (id. at 882)--Bodum contends that Claims 19 and 23 contain ambiguous language ("such that substantially no liquid passes..."), and it then looks to the specification to conclude that the claims contemplate a spring.

But Bodum's attempted reading cannot be credited because it is inconsistent with this Court's May 14, 2008 Markman analysis (in the "Markman Opinion," 552 F.Supp.2d 810[6]). First, Bodum had

---

[6] Citations to that opinion will take the form "Markman Op. at --," designating the page number in 552 F.Supp.2d.

an opportunity--more than that, the obligation--to raise any perceived ambiguities at the claim construction stage, but it never suggested that Claims 19 and 23 necessarily contemplate a spring. Furthermore, when this Court construed Claims 1 and 10 it concluded that the language "substantially no liquid" was not indefinite (Markman Op. at 815). Bodum's argument that placing "such that" before "substantially no liquid" renders the claim ambiguous runs afoul of that determination. Also, as Meyer points out, a patent should not be construed as limited to the embodiments represented in the patent specification (Phillips v. AWH Corp., 416 F.3d 1303, 1323 (Fed Cir. 2005)(en banc)). With that unsound argument as the only string to its bow, Bodum has not raised a genuine issue of material fact as to literal infringement by Version 2.

That said, however, Bodum does raise a factual issue as to literal infringement regarding Version 3. It argues that Version 3 does not come within the limitation of Claims 19-21 and 23-25 that "substantially no liquid passes between the...plunger body and the...[container]" when the frother is operated. On that score Bodum's opinion witness concluded that when Version 3 is operated, an "appreciable amount of liquid" passes between the plunger and container (B. St. ¶3, B. Add. St. ¶¶17-21).[7]

---

[7] Meyer attacks the testimony of Bodum's opinion witness, arguing that it conflicts with the Markman Opinion because the opinion witness calculates the dimensions of the space between

With summary judgment thus unavailable on grounds of direct infringement by Version 3, this opinion turns to considering whether Meyer has established that Version 3 "necessarily infringes" under the doctrine of equivalents.[8] Infringement may be established where "the accused product or process contain[s] elements identical or equivalent to each claimed element of the patented invention" (Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 40 (1997)). Infringement under the doctrine of equivalents is again a question of fact (Cook Biotech, 460 F.3d at 1373).

Meyer urges that the Version 3 frothers necessarily infringe Patent '122 under the doctrine of equivalents because they are virtually identical to Version 1 in design, operation and result achieved, and because Version 1 (per the Opinion) infringes Patent '122. Meyer also argues that deposition statements by Bodum's President Thomas Perez ("Perez") and by Jorgen Bodum

---

the plunger and container in an effort to quantify the amount of liquid flowing through (M. R. Mem. 3). Meyer points out that Markman Op. at 815 observes, in construing the term "substantially no liquid," that "defining the exact amount [of liquid] is scarcely necessary." But that quoted language is drawn from an entirely different context. There the Markman Opinion addressed the meaning of the claim language in the abstract, while Bodum's opinion witness assessed whether specific frothers embody the claim limitations.

[8] It is unnecessary to consider Version 2 here, both (1) because Meyer has established literal infringement by Version 2 and (2) because Bodum has not argued that Version 2 does not infringe under the doctrine of equivalents--it focuses solely on Version 3.

10

(referred to by his full name to distinguish him from the defendant)--a Bodum director and the President and CEO of Bodum Holding AG--amount to admissions of equivalency. Both of those witnesses testified (1) that the plunger is the only difference between Versions 1 and 3 and (2) that Versions 1 and 3 operate in the same way and produce the same result (frothed milk) (M. St. ¶¶6-7, 11-14, 21). Perez further testified that Versions 1 and 3 have the same instructions and that Bodum did not change the part number or inform customers of the redesign (M. St. ¶¶6, 12). And Jorgen Bodum further testified that the plungers for Versions 1 and 3 perform the same function (M. St. ¶13).

In response Bodum argues as a threshold matter that the cited testimony by Perez and Jorgen Bodum merely reflects general statements about the operation of Version 3 and should not be taken as admissions of equivalence. That contention is no more than makeweight: Their testimony is what it is, it certainly bears on the equivalence issues, and it is binding on Bodum as to what it says. More to the point, Bodum--echoing its arguments against literal infringement--contends that Version 3 is not equivalent because an "appreciable amount of liquid" flows between the plunger and container when Version 3 is operated, contrary to the claim limitation that "substantially no liquid passes between the...plunger body and the...[container]" (B. St. ¶3, B. Add. St. ¶¶17-21).

11

Bodum's analysis of the doctrine of equivalents issue draws upon the "triple identity test," which assesses whether "the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product" (Wavetronix LLC v. EIS Elec. Integrated Sys., 573 F.3d 1343, 1360 (Fed. Cir. 2009)). Bodum's first effort to call on that test is an obvious nonstarter: It contends that the Version 3 frothers do not produce "substantially the same result" as the patented method, characterizing the flow of liquid between the plunger and container as a "result" of performing the method. That of course makes no sense--plainly the "result" of performing the method--the one that Bodum, like Meyer, wants to achieve--is the frothed milk produced through the pumping of the plunger.

Fortunately for Bodum, however, equivalence must be analyzed for each "claimed element" (Warner-Jenkinson, 520 U.S. 17, 40). Hence the required inquiry is whether Bodum's assertion that an "appreciable amount of liquid" flows through in its Version 3 frother means that there is no equivalence as to the patent's claimed element that "substantially no liquid" flows through.[9]

---

[9] Here the parties do not question whether the "substantially no liquid passes" language qualifies as a "claimed element," a term not explicitly defined in Warner-Jenkinson. In that respect, Kustom Signals, Inc. v. Applied Concepts, Inc., 264 F.3d 1326, 1333 (Fed Cir. 2001) concluded that the word "or" was not itself a "claimed element," but of course the relevant claim language in this case is far more expansive and detailed.

12

Because a jury might plausibly decide this factual question in Bodum's favor, summary judgment for Meyer is inappropriate and is denied.[10]

### Inducement of Infringement

Although what has been said to this point has resolved the issue of direct infringement as to both Version 2 and Version 3 in Rule 56 terms, Meyer has also plumped for summary judgment on an alternative basis for Bodum's liability: whether Bodum is on the hook for inducement of infringement by the redesigned frothers. This opinion will go on to treat with that issue in the interest of completeness.

Under Section 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." To establish such liability "a patent holder must prove that once the defendants knew of the patent, they actively and <u>knowingly</u> aided and abetted another's direct infringement" (<u>DSU Med. Corp. v. JMS Co.</u>, 471 F.3d 1293, 1305 (Fed. Cir. 2006)(en banc in part) (emphasis in original, internal quotation marks and brackets

---

[10] Bodum further argues that a finding of equivalence would impermissibly vitiate the claim limitation that no substantial amount of liquid may flow between the plunger and the wall. If a finding of equivalence would completely vitiate (that is, render meaningless) a claimed element, infringement under the doctrine of equivalents is precluded as a matter of law (<u>Freedman Seating Co. v. Am. Seating Co.</u>, 420 F.3d 1350, 1358 (Fed. Cir. 2005)). This opinion need not delve into that issue, for Bodum has not tendered its own motion for a summary judgment of noninfringement.

omitted)). This Court concludes that Bodum loses as to Version 2 on that ground as well.[11]

Direct infringement by another under the DSU test may be based on "either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe" (Ricoh Co. v. Quanta Computer Inc., 550 F.3d 1325, 1341 (Fed. Cir. 2008)). Though Meyer does not provide evidence of specific instances of direct infringement by Bodum's customers, such proof is not required because this opinion has already held that Version 2 "necessarily infringes" the patented method when operated as directed.

Under the previously established standards reconfirmed in DSU, "specific intent to encourage another's infringement" (471 F.3d at 1306) is required to establish liability under Section 271(b), so that "knowledge of the acts alleged to constitute infringement is not enough" (id. at 1305 (internal quotation marks omitted)). DSU, id. at 1305 (ellipses and internal quotation marks omitted) also reconfirmed the type of evidence needed to make the required showing:

> Evidence of active steps taken to encourage direct infringement, such as advertising an infringing use or

---

[11] This opinion considers such potential liability only as to the Version 2 frothers. As for the Version 3 frothers, it has already been held that Bodum raises a genuine issue of material fact as to whether those frothers infringe the method when operated as directed, and "another's direct infringement" is a required showing under DSU and like cases.

14

> instructing how to engage in an infringing use, show an
> affirmative intent that the product be used to
> infringe, and a showing that infringement was
> encouraged overcomes the law's reluctance to find
> liability when a defendant merely sells a commercial
> product suitable for some lawful use.

Meyer offers plentiful uncontroverted evidence that Bodum took "active steps...to encourage direct infringement" of the patented method by customers who used the Version 2 frothers. Meyer's opinion witness concluded that operating the Version 2 frothers according to Bodum's enclosed instructions infringes the patented method, and he supported that conclusion with a chart showing an element-by-element comparison of Claims 19 and 23 and Bodum's instructions for operating Version 2 (M. St. Ex. H). Meyer asserts, and Bodum does not contest, that the instructions for operating Version 2 are the same as the instructions for Version 1--indeed, the enclosed instructions are identical (M. St. ¶12-13, Ex. G). And of course Opinion at 790 has previously determined that Bodum's instructions for the Version 1 frothers "instruct[ed] how to engage in an infringing use" as contemplated in DSU.

Although the parties do not expressly address whether the DSU analysis is impacted by Bodum's assertion at B. Add. St. ¶34 that it mistakenly sold Version 2 frothers featuring O-rings, it is important to take a brief look at that question. After all, Bodum claims that it always intended to remove the O-rings from the redesigned frothers in the belief that doing so would avoid

15

infringement (B. Add. St. ¶33), and such a mistake might arguably show that Bodum lacked the necessary specific intent to induce infringement.

But that turns out to be a red herring, because the purported evidence that Bodum offers to support its assertion of mistake fails to stave off summary judgment. That proffer consists of statements (1) in an interrogatory response signed by Perez (M. St. Ex. A) and (2) in Jorgen Bodum's declaration (B. Add. St. Ex. H). But neither of them demonstrates any personal knowledge of the asserted mistake (thus rendering the statements themselves inadmissible under Rule 56(e)), so that both individuals' bald conclusory assertions of mistake do not suffice to raise a genuine issue of material fact as to intent. Consequently this Court also finds for Meyer on inducement of infringement via the Version 2 frother.

## Conclusion

In sum, summary judgment is denied on the issues of direct infringement and inducement of infringement as to the Version 3 frothers.[12] But as to the Version 2 frothers, Bodum has failed

---

[12] That makes it unnecessary to turn to Bodum's argument that infringement liability is foreclosed because it acted on a good faith belief that Patent '122 is invalid and because it relied on counsel's opinion that Version 3 would not infringe. But on that score Meyer's R. Mem. 5 points out that (1) Bodum has never sought to amend its Answer to assert such a defense, (2) it has never stated such a defense in response to Meyer's contention interrogatories and (3) it objected to an interrogatory on that subject by asserting the attorney-client privilege, so that any

16

to identify a genuine issue of material fact that would preclude granting summary judgment in Meyer's favor on the issues of both direct infringement and inducement, and so Meyer's Rule 56 motion is granted in that respect. It bears repeating, of course, that the issue of validity of the Meyer Patents has not yet been confronted.

                                              _____
                                              Milton I. Shadur
                                              Senior United States District Judge

Date: December 15, 2009

---

such defense has been waived (id. at 6)--or, more accurately, forfeited (see Opinion at 795-98).