IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MEYER INTELLECTUAL PROPERTIES LIMITED, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 06 C 6329 ) |
| BODUM, INC., | ) ) |
| Defendant. | ) ) |

MEMORANDUM OPINION AND ORDER

Meyer Intellectual Properties Limited and Meyer Corporation, U.S. (collectively "Meyer," treated for convenience as a singular noun to avoid awkward verb usage) prevailed during a November 2010 jury trial on its claim that Bodum, Inc. ("Bodum") has infringed its United States patent numbers 5,780,087 ("Patent '087," entitled "Apparatus and Method for Frothing Liquids") and 5,939,122 ("Patent '122," entitled "Method for Frothing Liquids")(collectively "Meyer Patents")--see the Complaint's Request for Relief ¶B). At the end of the trial the jury returned a verdict in Meyer's favor, finding that the Meyer Patents were valid and that Bodum's infringement was willful,[1] and it awarded Meyer its requested damages of $50,000.

Meyer now files a motion under 35 U.S.C. §§284 and 285[2] for

---

[1] This Court had previously granted Meyer's motion for summary judgment on the infringement issue (Dkt. 111, 145)

[2] All further references to Title 35's provisions will simply take the form "Section --."

treble damages, for a finding that the case is "exceptional" in the statutory sense and for an award of attorneys' fees. For the reasons stated in this memorandum opinion and order, the motion is granted.

**Section 284 and 285 Standards**

Under Section 284 a court may increase the award of damages for patent infringement up to three times the amount awarded by the trier of fact. That involves a two-step inquiry, as taught in Mentor H/S, Inc. v. Med. Device Alliance, Inc., 244 F.3d 1365, 1380 (Fed. Cir. 2001)(citation omitted):

> First, the fact-finder must determine if an accused infringer is guilty of conduct, such as willfulness, upon which increased damages may be based. If so, the court then exercises its discretion to determine if the damages should be increased given the totality of the circumstances.

In turn Section 285 gives a court discretion to "award reasonable attorney fees to the prevailing party" in exceptional cases.

Courts consider the same set of specific factors in determining whether damages should be increased and whether attorneys' fees should be awarded under Sections 284 and 285, respectively (Read Corp. v. Portec, Inc., 970 F.2d 816, 826-27 (Fed. Cir. 1991);[3] nCube v. SeaChange Int'l, Inc., 436 F.3d 1317,

---

[3] Read has been overtaken by Markman as to the handling of claim interpretation, but that has no impact on the principle stated in the text.

1325 (Fed. Cir. 2006)).[4] Read, 970 F.2d at 827 (citations and footnotes omitted) sets out those factors:

> (1) whether the infringer deliberately copied the ideas of design of another;
>
> (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed;
>
> (3) the infringer's behavior as a party to the litigation.
>
> (4) Defendant's size and financial condition.
>
> (5) Closeness of the case.
>
> (6) Duration of defendant's misconduct.
>
> (7) Remedial action by the defendant.
>
> (8) Defendant's motivation for harm.
>
> (9) Whether defendant attempted to conceal its misconduct.[5]

---

[4] Our Court of Appeals has recently announced a similar "abuse of process" approach in deciding whether to award attorneys' fees in exceptional cases in the trademark context (Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC, 626 F.3d 958, 963-64 (7th Cir. 2010)). This case, however, calls for looking to the Federal Circuit (the exclusive intermediate appellate authority in patent jurisprudence) for the relevant standard.

[5] [Footnote by this Court] After stressing that courts rely on the Read factors in determining whether attorneys' fees should be granted under Section 285, Bodum Mem. 27 (quotation marks and citations omitted, emphasis in original) nonetheless argues that attorneys' fees should not be awarded unless "the lawsuit was objectively baseless in the sense that no reasonable litigation could realistically expect success on the merits." But the cases cited by Bodum for that claimed proposition apply such a test only in determining whether courts should award attorneys' fees to defendants against losing plaintiffs (see, e.g., Ilor, Inc. v.

Factors 1 through 3 are given special emphasis because they speak to whether the infringer acted in bad faith (id. at 826). Of course "[t]he paramount determination...is the egregiousness of the defendant's conduct based on all the facts and circumstances" (id.).

### Read No. 1: Deliberate Copying

Meyer argues that Bodum deliberately copied its patents. Its Mem. 7-8 describes in detail how Bodum's 3-Cup Chambord product is identical to Meyer's BonJour Caffe Froth product. In response Bodum Mem. 3 protests that the various components of the 3-Cup Chambord were either off-the-shelf items or components used in Bodum's French press coffee makers.

But that is not true as to the vital dimensions of the glass cylinder. On that score Jorgen Bodum, Bodum's chief manager, offered the lame characterization that the Bodum milk frothers were "exactly like the three-cup...just taller" (M. Mem. Ex. B 23:7). Additionally, Bodum presented no evidence that the glass cylinder used in its infringing products was an off-the-shelf item. And it will be recalled that the dimensions of the cylinder are indeed significant: Patent '087 expressly taught the 2:1 ratio that it embodied as part of its first claim.

Bodum Mem. 3 also contends that it did not have knowledge

---

Google, Inc., Nos. 2010 C 1117 and 2010 C 1172, 2011 WL 140358, at *3-*4 (Fed. Cir. Jan. 11)). Such cases are plainly inapposite where, as here, the plaintiff has prevailed.

(1) of Meyer's products before the date on which it sold the first version of its product or (2) of the Meyer Patents before the filing of this lawsuit. While it is true that Jorgen Bodum so testified at trial, it is hard to believe (and more importantly, the jury was not required to believe) that Bodum, a direct competitor of Meyer in this market, had no knowledge of the relevant Meyer products and yet somehow produced a substantially identical product shortly after the issuance of Patent '087. It is surely reasonable to consider that in finding willfulness the jury implicitly rejected Bodum's assertion that it had no knowledge of those products before it sold its first version of the infringing products.

Whether Bodum knew of the Meyer Patents themselves is not relevant. What the first Read factor requires is that "the infringer deliberately copied the ideas or design of another"--not by contrast, as in the second Read factor, that the infringer had knowledge "of the other's patent protection" (Read, 970 F.2d at 827)(emphasis added)). Read, id. at 827 n.7, clarified that "'[i]deas' and 'design' would encompass, for example, copying the commercial embodiment, not merely the elements of a patent claim."

That focus on the commercial embodiment suggests that proving knowledge of the patent itself is not necessary, as long as the infringer was aware of the commercial embodiment of the

5

patent.  Here the jury's finding of willfulness implies that Bodum was aware of Meyer's products and, as already indicated, Bodum copied those products in every relevant way.  This first Read factor therefore points substantially in favor of Meyer.

### Read No. 2: Good Faith Belief

As to the earlier-quoted second Read factor, Meyer Mem. 10-11 contends that because Bodum did not seek advice of counsel that component also operates in Meyer's favor.  Bodum Mem. 8-9 admits that it did not seek advice of counsel but argues that the Federal Circuit has overturned the advice-of-counsel requirement in this context.  Bodum is wrong.

In that regard In re Seagate Tech, LLC, 497 F.3d 1360, 1371 (Fed Cir. 2007) did decide to "abandon the affirmative duty of due care" and the "affirmative obligation to obtain opinion of counsel."  But that was done in the context of setting the standard for "willful infringement" (id.).  By contrast, in i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, 858-59 (Fed Cir. 2010) the Federal Circuit has expressly declined to apply the Seagate-announced approach to the good-faith test suggested by Read:

> In deciding whether to enhance damages, the district court properly declined to reapply the test for willfulness set out in Seagate, 497 F.3d 1360. Although a finding of willfulness is a prerequisite for enhancing damages under §284, the standard for deciding whether--and by how much--to enhance damages is set forth in Read, not Seagate.

6

As this Court has stated elsewhere, under Read "the single most important factor is whether or not there was reliance on a competent opinion of counsel" (Northlake Mktg. & Supply, Inc. v. Glaverbel, S.A., 72 F.Supp.2d 893, 913 (N.D. Ill. 1999)).

In addition to failing to obtain an opinion of counsel, Bodum conducted no more than a superficial investigation (if that) into the Mayer Patents. Jorgen Bodum learned of the Meyer Patents after Meyer filed this lawsuit in November 2006 and promptly arrived at a personal belief that the Meyer Patents were not valid (M. Mem. Ex. B 24:3-13).

That belief relied on an older Italian patent case in which Frabosk had sued Bodum for violating its milk frother patent (id. 27:4-15). In a classic illustration of a faulty syllogism, Mr. Bodum assertedly thought that because an Italian court had found the Frabosk patent invalid, the Meyer Patents were also invalid (id.). And he arrived at that conclusion without reviewing the Meyer Patents (id. 79:4-19) and without any personal understanding of basic United States patent concepts such as "claims" or "prior art" (id. 74:8-75:24).

If Mr. Bodum had bothered to read the Meyer Patents, he would have learned that they contained requirements as to the dimensions of the glass cylinder that were not contained in previous patents (a component that this Court would later find determinative). Similarly, conducting such a review might have

7

led Mr. Bodum to realize his lack of expertise in the relevant matters and to ask for an opinion of counsel. Having failed to read the patents, to conduct any kind of meaningful investigation into them or to obtain an opinion of counsel, Bodum cannot be said to have formed a good faith belief. Hence the second <u>Read</u> factor also points strongly in Meyer's favor.

## **<u>Read</u> No. 3: Litigation Conduct**

Meyer Mem. 14-19 accuses Bodum of all manner of litigation misconduct. While a number of those accusations rest on an overly idealized notion of litigation, a substantial number do demonstrate serious trial misconduct on Bodum's part.

Even before the trial began, Bodum moved to allow their lay witnesses to testify about asserted prior art that this Court had previously excluded because those items had not been designated as relevant prior art by Bodum's retained expert--its proposed opinion witness (Dkt. 203). This Court rejected Bodum's later-advanced motion because it was an attempted end run around that earlier ruling (<u>id</u>.)

At trial Bodum's counsel waged a consistent campaign to impugn the inventor's conduct in front of the jury, despite this Court's having barred any claim of inequitable conduct on more than one occasion (Dkt. 181, 195). That campaign began in Bodum's opening statement when its counsel suggested that inventor Brady had not been truthful with the Patent and

Trademark Office (M. Mem. Ex. F 23:7-16). Later, in cross-examining Meyer's opinion witness Dr. Kavelis, Bodum implied that there was another method for frothing milk that Brady did not disclose to the PTO (M. Mem. Ex. G 38:11-14). Finally, in closing argument Bodum's counsel suggested that Brady received his patent just because of good lawyering rather than on the merits (M. Mem. Ex. A 60:4-24, 63:3-14).

Bodum's misconduct on the last day of trial started even before closing argument began. Bodum brought a claim chart that included a reference to asserted prior art containing the dimension requirements in the Meyer Patents (M. Mem. Ex. A 4:9-8:10). Less than 24 hours before, during the jury instruction conference, Bodum's counsel had specifically assured this Court and opposing counsel that any such chart would not contain such a reference (id.).

Bodum's troubling behavior continued throughout the closing. Perhaps the most problematic example came when Bodum's counsel indicated that patent examiners are not assigned to a limited set of technologies but instead "deal with a whole universe of technologies," so that "one day it might be the...cell phone or the iPod...[a]nd then they have to deal with other inventions that come in that are a lot simpler" (id. 50:7-11). That assertion is manifestly untrue. Patent examiners are assigned to art units and often have a great deal of expertise and training

9

in the relevant area.

This is not to suggest, of course, that such examiners never make mistakes or that Bodum should not be able to have suggested as much. What was inappropriate, though, was the suggestion that such mistakes are more likely because patent examiners deal with a wide range of technologies.

These are but a few examples of what this Court considers inappropriate litigation conduct on Bodum's part. And those specific examples are reinforced by the the numerous times this Court had to ask Bodum's counsel to make statements to the jury correcting possible problematic impressions (M. Mem. Ex. B 30:6-15; Ex. B 40:7-22;; Ex. B 94:25-96:15; Ex. G 45:12-48:16). Such litigation misconduct, when combined with the earlier discussion of the first two Read factors, justifies this Court's finding of bad faith.

### Read No. 4: Defendant's Size and Financial Condition

Meyer Mem. 19 asserts, and Bodum does not contest, that Bodum is a large enough company to absorb enhanced damages and attorneys' fees.

### Read No. 5: Closeness of the Case

This case was not close. Infringement was decided via summary judgment, and Bodum provided little evidence supporting its theories at trial. Bodum never came to grips with the fact that the Meyer Patents taught the importance of the dimensions of

the glass cylinder.  With Bodum's only opinion witness having been excluded from testifying on solid grounds, it provided no technical testimony to dispute Meyer's opinion witness and common sense arguments that its patents were valid and nonobvious.  For the reasons discussed earlier, it was transparent that Bodum took a casual attitude toward the Meyer Patents and engaged in willful infringement.  Those overwhelming facts, evidenced in part by the jury's quick deliberation, demonstrate that this case was not close.

### Read Nos. 6 and 7: Duration of Defendant's Misconduct and Remedial Action by Defendant

It is undisputed that Bodum continued to sell milk frothers that infringed on one or more of the Meyer Patents from November 2006, when Bodum first became aware of this lawsuit, through July 2008.  Though that conduct shines some negative light on Bodum's conduct, it is tempered by several mitigating circumstances.

First, Bodum did attempt to change its plunger design in May 2007, only seven months after learning of the lawsuit (B. Mem. Ex. C 20:25-21:17).  It is true that the Version Two plunger design still used an infringing design that included a silicon O-ring (id.), but Bodum's suggestion that the inclusion of the O-ring was a mistake is supported by its rapid efforts to remove those O-rings upon learning of such inclusion in July 2008 (id.).  And all of that took place before this Court found infringement for the first time in February 2009 (Dkt. 111).

11

As Meyer Mem. Ex. B 62:6-11 reflects, however, the infringing plunger devices were sold widely in the United Stats through July 2008, almost two years after Bodum first learned of the Meyer Patents. Further, Bodum admitted at trial that in at least one case it sent a silicon O-ring to a customer who complained that his Version Three plunger did not function as well without such an O-ring (M. Mem. Ex. D 77:13-21). All in all, these two factors do not point substantially in favor of either Bodum or Meyer.

### **Read No. 8: Motivation for Harm**

Meyer Mem. 25-26 asserts that Bodum's conduct evidences an intention to harm Meyer as its competitor, while Bodum does not respond directly. Despite what has been said earlier as to Bodum's having demonstrated indifference to the Meyer Patents, there is no significant evidence that Bodum's primary motivation in infringing those patents was to harm Meyer. Instead, as said earlier, there is at least some evidence that once Bodum learned of the lawsuit it made some effort to alter its products.

Even so, though, Bodum did not successfully effectuate those alterations for a significant period of time. And it would certainly be wrong to suggest that Bodum did not view Meyer as a competitor and did not introduce its infringing products to compete directly with Meyer. In sum, this eighth factor favors Meyer to some extent.

### Read No. 9: Concealing Conduct

Meyer's suggestions to the contrary, there is really no evidence to suggest that Bodum systematically attempted to conceal its misconduct. While Meyer is able to point to a few instances where Bodum dit not accurately describe certain facts at trial, those instances by themselves do not show an attempt to conceal the conduct at issue in this lawsuit. Hence this final factor does not add to the earlier-described heavy weighting of the Read scales toward Meyer and against Bodum.

### Rulings under Sections 284 and 285

Because the overall impact of the Read factors does favor Meyer heavily, this Court finds that Bodum acted in bad faith. It therefore awards additional enhanced damages under Section 284, enlarging the award to $150,000, three times the amount of the damages awarded in the verdict.

Additionally, for the reasons stated in detail in this opinion, this Court finds this to be an exceptional case under Section 285 and exercises its discretion to award reasonable attorneys' fees to Meyer.[6] To that end, Meyer Mem. 28-29 asks for $756,487.58 in fees, supporting that request by comparing its

---

[6] Meyer Mem. 30 n.17 reserves the right to request expert fees under this Court's inherent power to impose such an obligation as a sanction. Bodum Mem. 29 responds vigorously that such an award would be inappropriate. While this Court is disinclined to invoke such inherent power as a general matter, it is not called upon to decide that hypothetical issue at this time.

hourly rates and hours spent with industry averages.

In response Bodum Mem. 28 (emphasis in original) urges that "the Federal Circuit has also instructed district courts to consider (1) whether there were any excessive amounts of time spent on certain matters; and (2) <u>the amount of fees sought in relation to the compensatory award received</u>." Bodum, <u>id</u>. then argues that Meyer's request should be denied because it is unreasonable in light of the $50,000 compensatory award (<u>id</u>.)[7]

Bodum's argument is not persuasive. First, it makes too much of the Federal Circuit precedent on which it seeks to rely. <u>Maxwell v. Angel-Etts of Cal., Inc.</u>, No. 01 C 1601, 2002 LW 31809442, at *7 (Fed. Cir. Dec. 13) said that "a court may use the hybrid lodestar approach" under which "the court first determines a lodestar figure by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate." Then <u>Maxwell</u>, <u>id</u>., after listing a multitude of other factors that courts usually consider in increasing or decreasing the award from that lodestar figure, held that the district court there did not abuse its discretion when it spoke of "the excessive time spent on certain matters" and several other factors, as well as "the amount of fees sought in relation to the

---

[7] With this Court having awarded Meyer enhanced damages under Section 284, it would seem logical that the requested attorneys' fees ought to be compared to $150,000 rather than $50,000. But the ruling here does not hinge on that factor.

14

compensatory award received," in deciding to decrease the fee award from the lodestar figure.

Here, by contrast, there is not even a hint of Meyer's counsel having spent "excessive time"--of their having overtried the case. Their vigorous prosecution was necessary to counter Bodum's vigorous defense. And their billing passed the acid test of the market: "the best evidence of whether attorney's fees are reasonable is whether a party has paid them" (RK Co. v. See, 622 F.2d 846, 854 (7th Cir. 2010), quoting--and thus reconfirming--the principle stated in Cintas Corp. v. Perry, 517 F.3d 459, 469 (7th Cir. 2008)). Here Meyer paid its counsel the now-requested fees without reference to the possibility--and certainly without any assurance--that the payment would be reimbursed by Bodum.

Moreover, comparing compensatory damages with requested fees is not appropriate here. Under Section 284 and Federal Circuit caselaw (see, e.g., Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc., 609 F.3d 1308, 1319 (Fed Cir. 2010)) the damages award must be no less than a reasonable royalty calculated from "a hypothetical negotiation between the patentee and infringer based on the factors in Georgia-Pac. Corp. v. U.S. Plywood Corp., 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970)." And any such hypothetical negotiation is of course predicated on the fiction that such a willing patentee exists.

15

Here Meyer made it clear that it would never have considered such a license to Bodum. Its corporate mindset is totally understandable in light of the obvious market considerations that are not satisfied by any reasonable royalty concept. In particular, given the fact that the Meyer Patents are set to expire shortly, a fact reflected in its opinion witness' relatively small calculation of the value of the royalty,[8] the market advantages that persist even after a patent monopoly expires gain enhanced importance and maximize the incentive to enforce the patent against a willful infringer. In real world terms, the holder of a valuable but now-expired patent has a substantial competitive edge over newcomers in terms of its established name recognition and other components of the goodwill built up during the term of the patent monopoly. Such factors make a direct comparison between the compensatory damages and the requested attorneys' fees in this case an unconvincing basis for reduction of the requested fees.

All things considered, then, this Court does not find a comparison between the compensatory damages and the requested attorneys' fees constitutes a basis for reducing the unchallenged lodestar amount in this case. Here too Meyer prevails.

---

[8] That same fact essentially foreclosed the ability of a responsible opinion witness such as Meyer's designated expert to formulate an alternative measure of damages that would not be subject to criticism as an impermissible ipse dixit pronouncement.

**Conclusion**

In sum, this Court increases the damage award to Meyer to the sum of $150,000 (3 x $50,000) and also awards Meyer its attorneys' fees of $756,487.56. Judgment is ordered to be entered in Meyer's favor and against Bodum in the amount of $906,487.56.

_____
Milton I. Shadur
Senior United States District Judge

Date:   February 16, 2011