IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MEYER INTELLECTUAL PROPERTIES LIMITED; and<br>MEYER CORPORATION, U.S.,<br><br>    Plaintiffs,<br><br>    v.<br><br>BODUM, INC.,<br><br>    Defendant. | Civil Action No. 06-CV-6329<br><br>Judge Harry D. Leinenweber |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT OF INFRINGEMENT AND NO INEQUITABLE CONDUCT**

**INTRODUCTION**

Defendant Bodum, USA[1] ("Bodum") won its liability appeal on the thinnest of grounds—a lack of evidence that anyone pumped the plungers in its accused milk frothers. Bodum has now admitted that its representatives used its milk frothers. By Bodum's own admissions, therefore, it infringes U.S. Patent Nos. 5,780,087 ("the '087 patent") and 5,939,122 ("the '122 patent") (collectively, "Patents") of Plaintiffs Meyer Intellectual Properties Limited and Meyer Corporation, U.S (collectively "Meyer"). The Court previously granted Meyer summary judgment of infringement, finding that Bodum induced infringement of the Patents through its sales of Bodum's Version 1 and Version 2 milk frothers. The Federal Circuit reversed and remanded that decision because there had not been proof of the underlying direct infringement. After limited discovery upon remand, Bodum stipulated that its representatives used the Version 1 and 2 products to froth milk. The undisputed facts, therefore, establish that Bodum's use and sales of these milk frothers constitute infringement of the Patents and summary judgment is appropriate. *See* Exs. 1-3 (infringement charts based upon Bodum's admissions).

Having admitted infringement, Bodum attempts to evade its infringement liability by asserting that the Patents are unenforceable due to the inventor's inequitable conduct for failing to disclose allegedly material information to the U.S. Patent and Trademark Office ("PTO"). That effort cannot succeed because inequitable conduct requires proof, by clear and convincing evidence, that the patent applicant: (1) withheld material information; (2) knew the information was material; and (3) withheld the information with a specific intent to deceive the PTO. After a full and lengthy discovery process, Bodum has failed to present any particular evidence that Brady, the sole inventor, knowingly withheld any material information, much less that he had the

---

[1] Bodum USA, Inc. is the predecessor of Bodum, Inc. (SOF ¶ 3)

1

requisite intent to deceive the PTO. Accordingly, summary judgment of no inequitable conduct is appropriate because Bodum cannot meet its evidentiary burden.

## BACKGROUND

### I. THE PATENTS

On September 23, 1996, the sole inventor of the Patents, Frank Brady ("Brady"), applied for the '087 patent claiming an inventive method of frothing milk using aeration rather than steam. (Plaintiffs' Local Rule 56.1 Statement of Material Facts in Support of Their Motion for Partial Summary Judgment of Infringement and No Inequitable Conduct ("SOF") ¶ 10.) Brady later filed a second application—a continuation of the '087 patent—which issued as the '122 patent. (SOF, ¶ 9.) The Patents share a common specification and effective filing date of September 23, 1996. *Id.* Brady transferred his rights to the Patents in connection with the sale of his house wares company to Meyer in 2005. (SOF, ¶ 13.)

Meyer's Patents are directed to a method for frothing liquids such as milk. (SOF, ¶ 10.) Generally speaking, the claims disclose four steps: (A) providing a container that has a height to diameter aspect ratio of 2:1; (B) pouring liquid (e.g., milk) into the container; (C) introducing a plunger that includes at least a rod and plunger body with a screen; and (D) pumping the plunger to aerate the liquid (e.g. to create froth). (SOF, ¶ 11.)

### II. BODUM'S INFRINGING VERSION 1 AND VERSION 2 MILK FROTHERS

Meyer has accused three Bodum milk frothers of infringement: (1) the Chambord Frother Model No. 1964; (2) the Aerius Frother Model No. 1364; and (3) the Shin Bistro Frother Model No. 10492 (collectively the "Accused Milk Frothers"). (SOF, ¶ 17.) Significantly, the operation and instructions for use of each of the three are the same. (SOF, ¶¶ 36, 37.) Each of the Accused Milk Frothers includes a plunger positioned within the cylindrical container. (SOF, ¶¶ 18, 20.) The plunger is attached to a vertical rod with a handle on the opposite end and is moved within

the container to froth the liquid. (SOF, ¶¶ 20, 37.) In 1999, Bodum began selling the Accused Milk Frothers with a first version of the plunger design ("Version 1"), which is shown in the below photographs. (SOF, ¶ 21.)




Shortly after being served with the Complaint, Bodum ceased manufacturing its Version 1 frothers and transitioned to a second version of frothers with a revised plunger design ("Version 2"), which is shown in the below photographs. (SOF, ¶¶ 4, 31, 32.)




On May 1, 2013, Bodum stipulated that at least one Bodum representative demonstrated use of a Version 1 frother and that at least one Bodum representative demonstrated use of a Version 2 frother. (SOF, ¶¶ 42, 43.) Bodum specified that by "demonstrated" it meant that the representative placed milk into the container, of the Version 1 and Version 2 milk frother respectively, and then pumped the plunger until the milk was frothy or foamy. *Id.* As detailed

3

below and in the attached claim charts (Exs. 1-3), Bodum's stipulation provides the evidence of direct infringement deemed missing by the Federal Circuit and establishes that Bodum directly and indirectly infringes the Patents through its use and sale of Version 1 and 2 milk frothers.

### III. CASE HISTORY

On November 20, 2006, Meyer filed the instant action alleging that certain Bodum milk frothers infringed the Patents. (SOF, ¶ 4.) On January 19, 2007, Bodum filed its Answer and Counterclaims and alleged the defense that the Patents were unenforceable due to the named inventor's inequitable conduct. (SOF, ¶ 5.)

The Court previously granted Meyer's motions for summary judgment that Version 1 and Version 2 of Bodum's milk frothers infringed the Patents. (Dkt. 111 and 145.) At trial in 2010, a jury verdict in Meyer's favor found (1) that the Patents were not invalid, and (2) that Bodum's infringement was willful, and awarded Meyer damages. (Dkt. 225.) Subsequently, the Court granted Meyer's motion requesting enhanced damages and attorney fees in an amount totaling $906,487.56. (Dkt. 235.)

On appeal, Bodum challenged, in-part, this Court's decision of summary judgment because there was no evidence that any one party performed each step of the asserted method claims. *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1365 (Fed. Cir. 2012)("Fed. Cir. Op."). The Court of Appeals for the Federal Circuit ("Federal Circuit") reversed this Court's finding of summary judgment of infringement because "Meyer failed to point to specific instances of direct infringement and failed to offer any evidence that someone at Bodum used its Version 1 and Version 2 frothers." *Id.* at 1371. Bodum has now admitted that it used its Version 1 and Version 2 milk frothers to froth milk. (SOF, ¶¶ 42, 43.)

Additionally, before trial, Judge Shadur granted Meyer's motion *in limine* to bar Bodum's evidence of inequitable conduct. (Dkt. 182) On appeal, the Federal Circuit reversed

4

this decision because "it was **procedurally** improper for the court to dispose of Bodum's inequitable conduct defense on a motion *in limine*." Fed. Cir. Op., 690 at 1378 (emphasis added) Notably, the Federal Circuit did not address the merits of Bodum's inequitable conduct defense.

Accordingly, this case was remanded for further proceedings consistent with the Federal Circuit's opinion. *Id.* at 1379. Upon its return to this Court, the parties were granted sixty days of further discovery, at the end of which Bodum admitted that it used its infringing Version 1 and Version 2 milk frothers to froth milk. (SOF, ¶¶ 42, 43.)

## SUMMARY JUDGMENT STANDARD

It is well-settled that "summary judgment is as appropriate in a patent case as in any other." *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1561 (Fed. Cir. 1988). Summary judgment is appropriate if, viewing the evidence in the light most favorable to the non-movant, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Cetrett*, 477 U.S. 317, 321 (1986); *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). The court's role in reviewing a summary judgment motion is "to determine based on the record whether there is a genuine issue of material fact requiring trial." *Costello v. Grundon*, 651 F.3d 614, 636 (7th Cir. 2011). Summary judgment is appropriate where a party has failed to make "a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322-23.

# ARGUMENT

## IV. BODUM DIRECTLY AND INDIRECTLY INFRINGES THE PATENTS

### A. Infringement Analysis

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefore, infringes the patent." 35 U.S.C. § 271(a). The analysis of patent infringement is a two step process: first, the court must construe the claims to determine their meaning and scope; and second, the properly-construed claims must be compared to the process accused of infringing. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 374 (1996).

In its Order dated May 14, 2008 (Dkt. 81), the Court construed the following terms:

| Claim Term | Construction |
|---|---|
| "spring" | "an elastic body or device that recovers its original shape when released after being distorted" |
| "A plunger body having a circumference" | "a component (of the plunger) having an outer circular periphery" |
| "screen" | "a perforated plate or meshed wire or cloth" |
| "not sealably connected to" | "no sealed connection is made" |
| "means for holding the screen" | Governed by 35 U.S.C. 112, ¶ 6 *Structure:* spring |

On appeal, the Federal Circuit conducted its *de novo* review of the claim constructions and construed one additional term while leaving the other constructions intact[2]:

| Claim Term | Construction |
|---|---|
| "providing" | "furnishing, supplying, making available, or preparing" |

*Fed. Cir. Op.,* 690 at 1369.

---

[2] Accordingly, there are no outstanding issues as to claim construction because the Federal Circuit's construction of the claims is accorded stare decisis effect and binds lower courts in subsequent cases involving that patent. *See AFG Indus., Inc. v. Cardinal IG Co., Inc*., 375 F.3d 1367, 1372 (Fed. Cir. 2004) (stating that the Federal Circuit's claim construction is the law of the case, which "generally bars retrial of issues that were previously resolved."); *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp*., 149 F.3d 1309, 1315 (Fed. Cir. 1998) (noting that the prior Federal Circuit construction of all claim terms in dispute was law of the case); *Epcon Gas Systems, Inc. v. Bauer Compressors, Inc.*, 90 Fed.Appx. 540 (Fed. Cir. Feb. 2, 2004) (holding that the district court's purported clarification of prior claim construction affirmed by the Federal Circuit violated law of the case).

B.  **Bodum Representative's Directly Infringed the Patents**

A method claim is directly infringed when each step of a claim is practiced. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009). Stipulating that its representatives used the Version 1 and 2 milk frothers in a clearly infringing manner, Bodum undeniably practices each step of the Patents.

The independent claims of the Patents all generally include the same four overarching steps: (A) providing a container that has a height to diameter aspect ratio of 2:1; (B) pouring liquid (e.g., milk) into the container; (C) introducing a plunger that includes at least a rod and plunger body with a screen; and (D) pumping the plunger to aerate the liquid. (SOF, ¶ 11.) Bodum's direct infringement of these steps within claim 19 of the '122 patent is discussed in detail below and is exemplary of what is shown in the attached claim charts (Exs. 1-3) for the other asserted claims. Claim 19 reads as follows:

> 19. A method for aerating a liquid comprising the steps of:
> [A][3] providing a container characterized by a height and a diameter, the height being at least two times the diameter, the container having an inside wall;
> [B] placing the liquid into the container;
> [C] introducing a rod terminating in a plunger into the liquid in said container so that the plunger contacts the liquid, the plunger comprising:
> > a plunger body having a circumference; and
> > a screen; and
> [D] pumping the plunger by moving the rod in a vertical motion such that:
> > a) the plunger passes through the liquid in the container for a time sufficient to aerate the liquid until it takes on a frothy or foamy consistency,
> > b) substantially no liquid passes between the circumference of the plunger body and the inside wall of the container during the pumping step.

Regarding step [A], there is no disputing that when the Bodum representatives used a Version 1 or 2 frother they satisfied the providing step consistent with the Federal Circuit's construction. Indeed, the Federal Circuit stated "that anyone who takes a Bodum frother from

---

[3] "[X]" is not part of the claim language and has been added to facilitate reference to the steps of the claim.

7

the kitchen cabinet and places it on the counter before filling it with milk can satisfy the 'providing' step. That person has undoubtedly made the container available for use and prepared it for frothing." *Fed. Cir. Op.*, 690 at 1369. Regarding the 2:1 height to diameter container ratio in step [A], Bodum has admitted that the height is at least two times the diameter. (SOF, ¶ 19)

Step [B] requires that liquid is placed in the container. Bodum's stipulation explicitly states that its representatives placed milk into the container satisfying this limitation. (SOF, ¶¶ 42, 43.)

Bodum has admitted that its milk frothers include a plunger assembly attached to the end of a rod, and that the plunger is used to froth the milk consistent with Bodum's stipulation of use. (SOF, ¶¶ 20, 37.) The plunger assembly is necessarily positioned in contact with the milk in the container as set forth in step [C]. Further, Bodum has admitted that the plungers of the Version 1 and 2 frothers include a plunger body having a circumference and a screen. (SOF, ¶¶ 21, 23, 32, 34.)

With respect to step [D], Bodum stipulated that its representatives pumped the plungers of the Version 1 and 2 frothers until the milk was frothy or foamy. (SOF, ¶¶ 42, 43.) While doing so, step [D] requires that "substantially no liquid passes between the circumference of the plunger body and the inside wall of the container during the pumping step." Judge Shadur held that "'substantially no liquid' clearly conveys that no appreciable amount of liquid passes between the circumference of the plunger body and the inside wall, though some does . . ." (Dkt. 81.) Regarding Version 1, Bodum admitted that the vast majority of fluid flow will be through the area bounded by the outer circumference of the plunger. (SOF, ¶ 26.) And with Version 2, Bodum admitted that the O-ring of the plunger body scrapes against the inside wall of the container during pumping. (SOF, ¶ 34.) Under this configuration, the "substantially no liquid"

limitation is satisfied because fluid flow around the plunger body will be substantially prevented as the O-ring scrapes the wall of the container. Accordingly, Bodum's use of the Version 1 and 2 frothers satisfy final step [D].

As shown in the attached claim charts, Bodum's stipulation and previously admitted facts conclusively establish that Bodum's use of the Version 1 frothers literally infringe claims 1-3 and 5-6 of the '087 Patent (Ex. 1) and claims 1-3, 5-12, 14-21, and 23-25 of the '122 Patent (Ex. 2) and Bodum's use of the Version 2 frothers literally infringe claims 19-21 and 23-25 of the '122 Patent (Ex. 3). Accordingly, Bodum directly infringes the Patents.

### C. Bodum Actively Induced Infringement of the Patents

The patent statute also provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). Induced infringement requires evidence of direct infringement of the asserted claim and that the alleged infringer specifically intended to encourage another's infringement. *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 697 (Fed. Cir. 2008). Inducement occurs when the alleged infringer's actions "induced infringing acts and that he knew or should have known his actions would induce actual infringements." *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) (en banc). Accordingly, "if an entity offers a product with the object of promoting its use to infringe, as shown by clear expression or other affirmative steps taken to foster infringement, it is then liable for the resulting acts of infringement by third parties." *DSU Med.Corp. v. JMS Co.*, 471 F.3d 1293, 1305-1306 (Fed. Cir. 2006). "While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice." *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988).

Bodum knew of the existence of the Patents, at latest, upon service of the Complaint; therefore, Bodum was aware that use of its products would directly infringe the Patents. (SOF,

9

¶ 16.) Despite that knowledge, Bodum continued to encourage users to directly infringe the Patents. Indeed, after the Complaint was filed, Bodum rolled out another Version 1 model of infringing frother, the Shin Bistro, and then transitioned to another infringing version, the Version 2 frothers.[4] (SOF, ¶¶ 21, 31, 32.) Each of the Accused Milk Frothers included instructions on the box and on an insert within the package which taught the user how to use the Version 1 and Version 2 frothers in a way that exploited the milk frothing method as set forth in the claims. (SOF, ¶¶ 36-41); s*ee also* Exs. 1-3. "[A]dvertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe . . ." *DSU*, 471 F.3d at 1305.

Bodum actively induced infringement of the Patents by selling the Version 1 and 2 milk frothers and instructing users—including its own representatives—how to operate the products in a clearly infringing manner.

## V. BODUM CANNOT MEET ITS HEAVY BURDEN TO SUCCEED ON ITS INEQUITABLE CONDUCT DEFENSE

Bodum attempts to evade infringement liability by asserting the Patents are unenforceable due to Brady's alleged inequitable conduct for failing to disclose the Bodum Chambord 3-Cup French press model number 1923 (the "Bodum 3-Cup French Press") to the PTO. "Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc). For Bodum to succeed on its defense, it must prove that Brady "(1) misrepresented or omitted material information, and (2) did so with specific intent to deceive the PTO." *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1334 (Fed. Cir. 2011). In 2011, the Federal Circuit's *Therasense opinion* explicitly and intentionally "tighten[ed] the

---

[4] Bodum transitioned to a third version of the plunger design but that is not at issue.

standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public." *Therasense*, 649 F.3d at 1290. Bodum must prove each of these elements by clear and convincing evidence. *Id.* at 1287.

Bodum cannot meet its burden of proof for a finding of inequitable conduct under the heightened standard the Federal Circuit presented in *Therasense* because there is no evidence of the Bodum 3-Cup French press' "but for" materiality or that Brady deceptively withheld the Bodum 3-Cup French press from the PTO during the prosecution of his milk frother patents.

### A. Bodum Cannot Show Its Coffee Press Was Material Prior Art

Materiality of an undisclosed reference is generally determined by a "but-for" standard. "When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Id.* at 1291. Here, the prior art reference Bodum alleges Brady withheld from the PTO is, at most, merely cumulative of the numerous other coffee presses and frothers already disclosed to and considered by the PTO during the prosecution of the Patents. Accordingly, the undisclosed prior art does not satisfy this "but for" materiality requirement.

The Bodum 3-Cup French press cannot teach any of the claimed steps of the Patents' method of frothing milk because the undisclosed reference is a press coffee maker not a milk frother. Accordingly, Bodum's materiality argument hinges on whether the Bodum 3-Cup French press discloses elements of the claims directed to the frother itself, such as the 2:1 height to diameter ratio of the container. However, nothing in the record definitively indicates that the Bodum 3-Cup French press that Brady, while a marketing representative for Bodum, allegedly had knowledge of had the claimed 2:1 height to diameter aspect ratio. (SOF, ¶¶ 45, 47.) In fact, the Bodum 3-Cup French press included a container that was *shorter* than the container of the accused Version 1 frother with the 2:1 ratio. (SOF, ¶¶ 44, 45.)

11

Ultimately, Bodum must have proven by this point in the litigation that it would have been obvious to a person of ordinary skill in the art to revise the Bodum 3-Cup French press container by making it taller to meet the 2:1 limitation when it is implemented as a milk frother. However, this hindsight based argument falls short because Bodum's own milk frothers used shorter, wider containers for years, only changing to a ratio closer to the claimed one a few months *after* the '087 Patent issued. (SOF, ¶ 46.)

The Bodum 3-Cup French press is just like any of the other prior art references disclosed to and considered by the PTO, including multiple French presses, which do not disclose the 2:1 aspect ratio and which were disclosed to by Brady and considered by the PTO during the prosecution of the Patents. (SOF, ¶¶ 48-50.) Consequently, the reference Bodum alleges Brady withheld from the PTO is merely cumulative of the other prior art already before and considered by the PTO. (SOF, ¶ 51.) And, cumulative references are not material as a matter of law. *See, e.g.*, 37 C.F.R. § 1.56(b) ("[I]nformation is material to patentability when it is not cumulative to information already of record or being made of record in the application . . .").

Because the undisclosed prior art does not satisfy the "but for" test, Bodum cannot meet the materiality requirement and summary judgment for Meyer is appropriate.

### B. There is no evidence of Brady's specific intent to deceive the PTO

Even if the Bodum 3-Cup French press was material—which it is not because it does not have the 2:1 limitation—to prevail on a claim of inequitable conduct, Bodum must also prove that Brady acted "with the specific intent to deceive the PTO." *Therasense*, 649 F.3d at 1290. While intent may be inferred from "indirect and circumstantial evidence," "to meet the clear and convincing evidence standard, the specific intent to deceive must be the ***single most reasonable inference*** able to be drawn from the evidence." *Id.* at 1290-91 (citation omitted) (emphasis added). In other words, "when there are multiple reasonable inferences that may be drawn, intent

to deceive cannot be found." *Id*. The presence of any other reasonable inference renders the issue of inequitable conduct ripe for summary adjudication. *See id*. Bodum has not offered any evidence that Brady "**knew** of the reference, **knew** that it was material, and made a **deliberate decision** to withhold it" and Bodum bears the burden of proving its inequitable conduct defense by clear and convincing evidence. *Id.* at 1291 (emphasis added). During Brady's four-and-a-half hour deposition, Bodum failed to develop any supporting evidence to demonstrate Brady's alleged knowledge or intent. (SOF, ¶¶ 52, 53.) Thus, it was not surprising that Bodum chose not to call him as a witness during trial and chose not to seek a second deposition of Brady during the sixty day discovery period on remand. All Bodum is left with is its deficient record.

First, Bodum has failed to demonstrate that Brady even knew of the alleged material aspects (e.g. 2:1 aspect ratio of the container) of the Bodum 3-Cup French. This lack of knowledge prevents Brady from having the requisite intent to deceive. While it is true that Brady worked as an outside marketing representative for Bodum products and that Brady was familiar with Bodum's coffee presses, Brady's general knowledge of Bodum's product line, which included the Bodum 3-Cup French press, cannot satisfy the knowledge component required of inequitable conduct. "One cannot assume that an individual, who generally knew that a reference existed, also knew of the specific material information contained in that reference." *Exergen Corp.*, 575 F.3d at 1330. In *Exergen*, it was merely alleged the patentee knew of the undisclosed references prior to the issuance of the patent-in-suit. *Id.* at 1325. The court explained a finding of inequitable conduct would be inappropriate because the defendant only provided conclusory allegations. *Id.* at 1330; *see also FMC Corp. v. Manitowoc Co., Inc.*, 835 F.2d 1411, 1415 (Fed. Cir. 1987)(requiring proof of actual knowledge of the existence of the information alleged to be material). Just as in *Exergen*, Bodum's conclusory allegations,

13

supported by only evidence of Brady's general knowledge of the prior art, provide no basis to prove that he knew of the specific material aspects of the Bodum 3-Cup French press.

In addition, Bodum has not and cannot provide direct evidence of specific intent to deceive the PTO. Indeed, Brady testified that: (1) he was unfamiliar with "any consumers using French press coffee makers to froth milk;" (2) he had never seen anyone at Bodum use a coffee press to froth milk; (3) his patent counsel prepared his applications; and (4) he provided whatever information requested of him by his patent counsel. (SOF, ¶¶ 54-57.) From this evidence, deceptive intent cannot be inferred because Brady's deception is not the "single most reasonable inference." *Therasense*, 649 F.3d at 1290. Here, there are multiple reasonable inferences as to why Brady did not disclose the Bodum 3-Cup French press that do not require deceptive intent.

For example, one reasonable inference is that Brady or his counsel, (properly) concluded that the Bodum 3-Cup French press was merely cumulative of or less comprehensive than the numerous other references that had already been disclosed to the PTO during the prosecution of the Patents. *See* (SOF, ¶¶ 48-51). Another reasonable inference is that Brady, was either unaware of (or had negligently—even grossly negligently—forgotten) that the Bodum 3-Cup French press or its alleged relevance to the pending milk frothing method claims of the Patents. *See* Ex. 4, *Fujitsu Limited vs. Tellabs Operations, Inc.*, No. 09 Civ. 4530 (N.D. Ill. July 31, 2012), Dkt. No. 791 (finding a reasonable inference that avoided a finding of inequitable conduct was that the inventors simply erred by forgetting to include the material reference).

Indeed, courts have recognized that where the allegedly withheld disclosure is merely cumulative of other references before the PTO, a competing reasonable inference may be drawn that the applicant did not submit the reference out of the belief that it was cumulative rather than

from any deliberate attempt to hide it. *MeadWestvaco Corp. v. Rexam PLC*, 809 F. Supp. 2d 463, 477 (rejecting defendants' arguments that "the single most reasonable inference from non-disclosure is deception because (1) the law states otherwise, and (2) the information was duplicative."). In the present case, the Patents had over forty references, including coffee presses and milk frothers, that were considered by the PTO during the prosecution of the Patents. (SOF, ¶ 49.) One reasonable inference is that Brady or his counsel believe the undisclosed prior art was simply cumulative, especially in view of his lack of knowledge of the alleged material aspects of the Bodum 3-Cup French press.

Given these facts, deceptive intent is not the "single most reasonable inference" to be drawn as required by *Therasense.* 649 F.3d at 1290. To the extent there is any inference to be drawn, it is that Brady acted in good faith in identifying the references that he deemed most closely related to the claims of the Patents. Accordingly, Bodum's defense that Brady intended to deceive the PTO is simply without any evidentiary basis and partial summary judgment of no inequitable conduct should be granted.

## CONCLUSION

The undisputed evidence, including Bodum's own admissions, establishes that Bodum directly infringes and induces infringement of the Patents through its use and sale of Version 1 and Version 2 milk frothers. Accordingly, Meyer respectfully requests that the Court grant this motion for partial summary judgment of infringement. In addition, despite years of vigorous discovery, Bodum has not come forward with any evidence, let alone the required clear and convincing evidence, to support its defense of inequitable conduct. Therefore, Meyer respectfully requests that the Court grant Meyer's motion and find as a matter of law that the Patents are not unenforceable for inequitable conduct.

                                                                                         Respectfully submitted,

Dated: June 12, 2013

                                                                                         /s/ *R. David Donoghue*
                                                                                         Joshua C. Krumholz (*pro hac vice*)
                                                                                         HOLLAND & KNIGHT LLP
                                                                                         10 St. James Avenue
                                                                                         11th Floor
                                                                                         Boston, MA 02116
                                                                                         Tel: (617) 523-2700
                                                                                         Fax: (617) 523-6850
                                                                                         joshua.krumholz@hklaw.com

                                                                                         R. David Donoghue
                                                                                         Steven E. Jedlinski
                                                                                         HOLLAND & KNIGHT LLP
                                                                                         131 South Dearborn Street
                                                                                         30th floor
                                                                                         Chicago, IL 60603
                                                                                         Tel: (312) 263-3600
                                                                                         Fax: (312) 578-6666
                                                                                         david.donoghue@hklaw.com
                                                                                         steven.jedlinski@hklaw.com

                                                                                         *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2013, I filed the above paper entitled **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF INFRINGEMENT AND NO INEQUITABLE CONDUCT** with the Clerk of Court using CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

/s/ *R. David Donoghue*
R. David Donoghue